# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: ) | | |
| ) | | |
| CHRISTOPHER B. CASWELL ) | | CASE NO. 14-30011 |
| Debtor ) | | |
| ) | | |

| | | |
|---|---|---|
| JACQUELINE K RICHARDSON ) | | |
| Plaintiff ) | | |
| v ) | | A. P. NO. 14-3014 |
| CHRISTOPHER B. CASWELL ) | | |
| Defendant ) | | |

## Memorandum Opinion

This case comes before the Court on the Motion for Summary Judgment filed by the Plaintiff, Jacqueline K. Richardson ("Richardson"). At issue is whether the debt owed to Richardson is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Upon review of the motion, the supporting documents, and the response filed by the Defendant, Christopher B. Caswell ("Caswell"), the Court concludes that the Motion for Summary Judgment should be granted.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a).

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not in dispute. Caswell Interiors Limited ("Caswell Limited") is a business entity incorporated in the Commonwealth of Kentucky. Prior to February 2, 2004, Caswell owned 100% of the outstanding shares of Caswell Limited stock. Some period of time prior to February 2, 2004, Caswell induced Richardson to buy stock in Caswell Limited. Richardson alleged

that Caswell made false representations of fact to Richardson relating to the past and present income and expenses of Caswell Limited. She also alleged Caswell intended to deceive her in order to get her to purchase what she claimed was worthless Caswell Limited stock. On or about February 2, 2004, Richardson entered into and executed a purchase and assignment agreement, promissory note, and shareholders' agreement with Caswell, whereby Richardson acquired forty percent (40%) of the shares of the corporate stock held and owned by Caswell in Caswell Limited. As consideration for the parties' agreements, Richardson paid Caswell $230,600.00 for the stock.

Subsequently, Richardson learned that Caswell had intentionally misrepresented the past revenues and earnings of Caswell Limited in order to induce her to purchase stock in the corporation. Richardson learned from Caswell's certified public accountants that the corporate tax returns of Caswell Limited that Caswell gave her prior to the stock purchase were forgeries that grossly misrepresented both the past revenues and earnings of Caswell Limited.

On June 5, 2007, Richardson initiated a civil action against Caswell1 in the Jefferson County (Kentucky) Circuit Court to, among other things, recover the moneys that she paid Caswell for the stock of Caswell Limited. Richardson's state court Complaint set forth a number of alternative causes of action against Caswell. Count 1 of the Complaint sets forth averments supporting Richardson's claim for common law fraud against Caswell.

The state court case was ultimately tried to a jury on January 13, 14, and 15, 2009. Instruction No. 1 provided that the jury should find for Richardson if it was satisfied by clear and convincing evidence that 1) Caswell made representations to Richardson; 2) Caswell intended for Richardson to rely upon those representations; 3) that Caswell either knew the representations were not true or he acted with reckless disregard for whether or not they were true; 4) that Richardson

2

relied upon those representations; 5) that had Caswell provided Richardson with truthful information she would not have entered into the agreement; and 6) that Richardson suffered financial loss. Verdict Form No. 1 shows that the jury found for Richardson and against Caswell under Instruction No. 1.

Instruction No. 2 provided the jury should find for Richardson if it was satisfied that 1) Caswell obtained money from Richardson through the use of deception or false pretense; 2) that Caswell intended to deceive Richardson; that Caswell intended to deprive Richardson of her funds, and 4) that Richardson was injured as a result. Verdict Form No. 2 shows that the jury found for Richardson and against Caswell under Instruction No. 2.

Verdict Form No. 4 contains the juries finding and conclusion that Richardson was damaged by Caswell under one of the previous Instructions and awarded Richardson damages in the amount of $80,000.00. The jury did not award Richardson the $242,000.00 sought in the complaint.

In Instruction No. 5, the jury was instructed that if they had awarded damages under Instruction No. 4, and that they were satisfied by clear and convincing evidence that Caswell was acting fraudulently or maliciously, the jury could, in their discretion, award punitive damages. In response, the jury answered "No," and declined to award any punitive damages.

On January 26, 2009, the Jefferson Circuit Court entered a judgment (the "Judgment") consistent with the above-referenced verdict forms. The Judgment provides that Richardson shall have a judgment against Caswell in the amount of $80,000.00, plus costs, with interest at the legal rate of 12%. Caswell did not appeal the Jefferson Circuit Court's January 26, 2009 Judgment.

After the Judgment was entered, Richardson initiated measures to execute on the Judgment. In May 2009, Richardson served an Order of Garnishment on Caswell, Inc., Caswell's

3

post-judgment interior design venture. Following Caswell, Inc.'s failure to respond to the Order of Garnishment, the Jefferson Circuit Court, on or about December 27, 2010, entered an Opinion and Order finding Caswell in contempt for his actions in resisting Richardson's efforts to execute on the Judgment (the "Contempt Order"). The state court found that Caswell's response to the garnishment was "demonstrably false." The state court rejected Caswell's "explanation/defense both in terms of its factual credulity and legal merit." The state court found Caswell's statements "patently false and clearly intended to thwart Ms. Richardson's efforts to collect on the $80,000 judgment." The Jefferson Circuit Court ordered: (a) Caswell to pay a fine in the amount of $14,853.18 to Richardson; (b) Caswell to serve a twenty-four (24) day sentence in the Jefferson County jail; (c) Caswell to pay the costs of the proceedings, including Richardson's attorney's fees; and, (d) Caswell, Inc. to pay the costs ($1,482) of a previous contempt proceeding. Caswell appealed the Contempt Order, but the Kentucky Court of Appeals upheld the Contempt Order. The Kentucky Supreme Court entered an order on August 21, 2013, denying discretionary review.

On January 3, 2014, Caswell filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The deadline to file dischargeability proceedings was set at April 7, 2014, Richardson timely filed this action on March 31, 2014.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no

4

genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." Jones v. Union County, 296 F.3d 417, 423 (6th Cir. 2002). See generally Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997) (emphasis added). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. Tennessee Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir. 1996). Absent such evidence from the nonmoving party in a motion for summary judgment, the Court need not comb the entire record to determine if any of the available evidence could be construed in such a light. See In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

## DISCUSSION

Richardson seeks to have the Judgment entered in her favor declared nondischargeable in Caswell's Chapter 7 bankruptcy proceeding. Richardson's Complaint states a cause of action pursuant to 11 U.S.C. § 523(a)(2)(A). Additionally, Richardson contends that the damages awarded in the Contempt Order are also nondischargeable under § 523(a)(2)(A). To properly determine the issues raised in this case, the Court will address each of the debts sought to be held nondischargeable separately.

The Court will begin with the $80,000 judgment. It is well established that the doctrine of collateral estoppel applies in bankruptcy proceedings. See Grogan v. Garner, 498 U.S. 279, 284,

5

111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (A bankruptcy court may properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action); In re Brown, 489 Fed.Appx. 890 (6th Cir. 2012). Under the standards of full faith and credit enunciated in 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Schedule. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). "There is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment." Harris v. Byard (In re Byard), 47 B.R. 700, 707 (Bankr. M.D. Tenn. 1985).

State court judgments, however, are entitled to preclusive effect in nondischargeability actions only if the law of that state would apply collateral estoppel to those judgments. Id.; In re Francis, 226 B.R. 385, 388 (6th Cir. BAP 1998). Thus, the Court must look to Kentucky law to determine if collateral estoppel or issue preclusion applies in this case.

In Kentucky, issue preclusion bars the same parties from relitigating an issue actually litigated and finally decided in another prior action. Under this doctrine, a party is barred from re-litigating any issue actually litigated and finally decided in an earlier action. Buis v. Elliot, 142 S.W.3d 137, 140 (Ky.2004) (citing Yeoman v. Commonwealth Health Policy Bd., 983 S.W.2d 459, 464 (Ky.1998)). Under Kentucky law, to apply issue preclusion requires four elements. First, the issue in the second proceeding must be the same as the issue in the first. Yeoman, 983 S.W.2d at 465. Second, the issue must have been actually litigated. Id. Third, the issue must have been actually decided. Id. Fourth, the decision on the issue must have been a necessary component of

6

the prior proceeding. Id.

There is no real question that each of these elements have been met. The issue of fraud is identical in the state court case and this adversary proceeding. A debt may be excepted from discharge in bankruptcy if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under section 523(a)(2)(A), a creditor must prove each of the following elements by a preponderance of the evidence: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. Rembert v. AT & T Universal Card Svcs., Inc. (In re Rembert), 141 F.3d 277, 280–81 (6th Cir. 1998).

The elements necessary to prove fraud under Kentucky law are the same as those required under § 523(a)(2). Compare Rivermont Inn, Inc. v. Bass Hotels and Resorts, Inc., 113 S.W.3d 636, 640 (Ky. App. 2003) with In re Rembert, 141 F.3d 277 (6th Cir.1998). Moreover, the standard of proof to find fraud under Kentucky law is by clear and convincing evidence, Pezzarossi v. Nutt, 392 S.W.3d 417, 419 (Ky. App. 2012), while in a § 523(a)(2)(A) action, the standard of proof is the lower preponderance of the evidence standard. Grogan v. Garner, 498 U.S. 279 (1991).

In this case, the jury found that Caswell made misrepresentations as to the financial solvency of the business. The jury found that Caswell knew the representations were not true or that he acted with reckless disregard for their veracity. The jury found that Caswell intended for Richardson to rely upon those representations. The jury found that Richardson relied upon the representations. Finally, the jury found Richardson suffered a loss due to those misrepresentations. Each of the

7

elements required for a judgment under § 523(a)(2)(A) were proven and found by the jury. Thus, there is an identity of issues.

Turning to the second element, there is also no question that Caswell was given a full and fair opportunity to litigate these issues. The verdict rendered in this case was entered after a three day trial in Jefferson Circuit Court.

As for the third and fourth requirements, the issue was fraud was actually decided in that action as evidenced by the Judgment and that issue was necessary to the state court's judgment.

Consequently, under these facts collateral estoppel/issue preclusion applies and the $80,000 judgment is nondischargeable. Caswell makes several arguments why collateral estoppel should not apply in this case. First, he notes that Instruction No. 1 did not use the term "material" with respect to the misrepresentations made by Caswell. He is correct on this point. The Instruction does, however, state that the misrepresentation concerned "the financial solvency/viability of Caswell Interiors." Thus, while the term "material" was not used, it is clear the misrepresentations concerned a material fact.

Next, Caswell argues that because the jury voted "No" on Instruction No. 5 (declining to award punitive damages), it is in direct conflict with Instruction No. 1 (finding Caswell acted fraudulently). The Court does not agree. As stated above, Instruction No. 5 asked the jury if it wanted, in its discretion, to award punitive damages. The jury declined to award punitive damages. It did not ask if Caswell was acting fraudulently as Caswell suggests, but instead simply asks whether the jury would impose punitive damages, under the conditions set forth therein. The decision to not award punitive damages is not in conflict with the previous decision finding Caswell acted fraudulently.

8

Finally, Caswell notes that the jury did not award Richardson the full amount of what she claimed. The Court must admit, it is at a loss to understand Caswell's point on this matter. Is he suggesting that because Richardson was not awarded the full amount of the damages she claimed, that he did not act fraudulently? If so, that argument is in direct conflict of the specific findings that the jury did make. As stated above, the jury found by clear and convincing evidence that Richardson proved each of the elements necessary to find Caswell acted fraudulently. The Court is unsure why the jury declined to award Richardson the full amount of her damages, but this question is immaterial as to the question of the dischargeability of this debt.

The Court now turns to the Contempt Order. As stated above, the state court found that Caswell was in contempt of court for his efforts in hindering Richardson's attempt to execute on the judgment. In addition to incarceration, the Circuit Court ordered Caswell to pay a fine in the amount of $14,853.18 to Richardson. The Circuit Court also ordered Caswell responsible for the costs of the proceedings, including Richardson's attorney's fees. Finally, the Circuit Court ordered Caswell Inc. to pay the costs and fees associated with a previous contempt matter ($1,482.00).

Richardson cites Cohen v. DeLa Cruz, 523 U.S. 213 (1998) in support of her argument that the Contempt Order should also be held nondischargeable. In Cohen, the debtor argued that the nondischargeable judgment should be limited to the amount of damages caused by the fraud, but that it should not include the punitive damages also included in the state court judgment. The Supreme Court did not agree and held that § 523(a)(2)(A) prevents the discharge of all liability arising from fraud, and that the award of treble damages fell within the scope of the exception to discharge. It held that "[o]nce it is established that specific money or property has been obtained by fraud ... 'any debt' arising therefrom is excepted from discharge." Id. at 218-19, 118 S.Ct. 1212.

9

Caswell tries to distinguish Cohen from the facts at issue in this case. He argues that the Contempt Order was entered almost a year later and that it had nothing to do with the fraud found in the Judgment. Thus, Caswell argues these facts are distinguishable from the punitive damages addressed in Cohen.

This Court does not agree with Caswell's reasoning. First, there is no temporal requirement in Cohen. Nowhere in that decision does the Supreme Court intimate that the damages must be in close temporal proximity to the original award of damages. The Supreme Court uses the term "any debt," and as such the "full liability traceable to the sum[,]' is also nondischargeable. Miller v. Grimsley (In re Grimsley), 449 B.R. 602, 621 (Bankr. S.D. Ohio 2011). If the Supreme Court had intended only those debts in close temporal proximity, the Court could have used those terms. This Court will rely upon what the Supreme Court actually held, and will not insert a temporal condition that was not expressed by the Supreme Court.

The case before this Court is somewhat similar to the case In re Nicodemus, 497 B.R. 852 (6th Cir. BAP 2013). In that case, the issue was whether the debtor's entire debt to a creditor should be excepted from discharge, including not just the $9,386.90 in damages awarded based on debtor's fraud, but the state court's $22,800 contempt sanction. The BAP held that the contempt judgment entered against the debtor, for willfully and without just excuse refusing to comply with court order, was also one arising out of the debtor's "false pretenses, false representation, or actual fraud," and thus also excepted from discharge. The Sixth Circuit BAP held that the bankruptcy court was correct in treating the contempt sanction like the punitive damage sanction in Cohen. "[B]ecause like contempt sanctions, punitive damages are awarded not to compensate the prevailing party, but rather are intended to punish and deter its repetition." Id. at 860.

10

Like the facts in Nicodemus, this Court finds that both the Judgment and the Contempt Order should be excepted from discharge.[1] Collateral estoppel/ issue preclusion applies directly to the Judgment. With respect to the Contempt Order, the Court finds this amount should also be excepted from discharge under the policy as set forth in Cohen, supra. The Court finds the Contempt Order arises out of the Caswell's fraud and misrepresentations, and as such it should be excepted from discharge under § 523(a)(2)(A). See also In re Campbell, 2014 WL 1491290 (Bankr. W.D. Ky. 2014) ("A debtor's liability for an award of attorney's fees, discovery sanctions, costs and interest are ancillary in nature, whose dischargeability depends upon the status of the primary debt.") citing In re Kennedy, 243 B.R. 1 (Bankr. W.D. Ky. 1977).

## CONCLUSION

For all of the above reasons, the Court finds Richardson's Motion for Summary Judgment, supported by the record, establishes that Richardson is entitled to summary judgment as a matter of law. Accordingly, Richardson's Motion for Summary Judgment is **GRANTED**.

## ORDER

Pursuant to the Memorandum Opinion entered this date and incorporated herein, and the Court being duly advised in the premises,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that Richardson's Motion for Summary Judgment be and hereby is, **GRANTED**. The State Court Judgment in the amount of $80,000 in favor of Plaintiff Richardson against Debtor/Defendant Caswell, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Contempt Order in the amount of $14,853.18, plus the

---

[1] This Judgment specifically excludes the amount of $1,482 ordered to be paid by Caswell, Inc. Caswell Inc. is not a debtor before this Court and this Court offers no ruling upon this part of the Contempt Order.

cost of the contempt proceedings, including attorney fees, is also not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

This is a final and appealable Order and there is no just reason for delay.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: March 25, 2015